[Crim. No. 2284. In Bank.—May 12, 1920.]

## THE PEOPLE, Respondent, v. ROY WOLFF, Appellant.

[1] JUVENILE COURT ACT—REMANDING OF PERSON UNDER EIGHTEEN YEARS OF AGE FOR EXAMINATION OR TRIAL—POWER OF JUVENILE COURT.—The superior court, sitting as a juvenile court, has the power under the juvenile court law, upon the hearing of a case which had been under examination before a magistrate upon a charge of crime and had been certified to the juvenile court because of the age of the defendant, to remand such defendant to the magistrate for examination or trial, regardless of age, if the court shall conclude that such person is not a fit subject for further consideration under the act.

[2] ID.—CERTIFICATION OF CAUSE TO JUVENILE COURT—ATTACHMENT OF COPY OF COMPLAINT—REQUIREMENT DIRECTORY.—The requirement of section 6 of the juvenile court law that the committing magistrate, after finding that a person charged with crime is under eighteen years of age, shall attach to his certificate a certified copy of the original deposition or complaint filed before him, is merely directory, and omission to comply therewith does not deprive the court of jurisdiction.

[3] ID.—APPEAL—PRESENTATION OF OBJECTION — RECORD. — Objection that in certifying the cause to the juvenile court, after finding that the person charged was under eighteen years of age, the magistrate failed to attach to the certificate a certified copy of

the original deposition or complaint filed before him, should be made part of the record, either by a bill of exceptions or by some special order of court to be reviewable on appeal.

[4] ID.—FAILURE TO MOVE TO SET ASIDE INFORMATION—WAIVER OF OBJECTION.—Objection that in certifying the cause to the juvenile court, after finding that the person charged was under eighteen years of age, the magistrate failed to attach to the certificate a certified copy of the original deposition or complaint filed before him, is waived where no motion was made to set aside the information or to arrest the proceedings upon that ground.

[5] CRIMINAL LAW—BIAS OF JURORS—OPINIONS FROM READING NEWS-PAPERS—CHALLENGES WHEN PROPERLY OVERRULED.—Challenges of jurors for actual bias for opinions formed from reading news-papers are properly overruled under section 1076 of the Penal Code in view of testimony that such opinions could be disregarded and a verdict rendered solely on the evidence.

[6] ID.—FOLLOWING OF INSTRUCTION BY JURORS—PROPER QUESTION BY DISTRICT ATTORNEY.—A question asked by the district attorney during the examination of jurors, that supposing they were in-structed if they should find the killing was done in an attempt to perpetrate a felony, that they would have no option in the matter, but that they should find the defendant guilty of murder in the first degree, would they follow such instruction, is not ob-jectionable as failing to advise them that the guilt of the defend-ant must be shown to a moral certainty and beyond a reasonable doubt, where the district attorney in his questions repeatedly stated that the court would instruct them that a conviction could not be had unless they were satisfied of guilt beyond reasonable doubt, and the court so instructed them.

[7] ID.—MURDER—STATEMENTS OF DECEASED CONCERNING ASSAULT—ERRONEOUS ADMISSION WITHOUT PREJUDICE—PROOF BY OTHER UN-CONTRADICTED EVIDENCE.—In a prosecution for murder wherein the evidence showed that the defendant hired the deceased and his automobile for a trip, and while on the trip, the defendant hit the deceased on the head with a hammer, and then took his money and automobile away from him, the erroneous admission of testi-mony of statements made by the deceased after the assault and before his death, concerning the crime, was not prejudicial, where the same facts were established by other uncontradicted evidence including the confession of the defendant.

[8] ID.—LOCKS OF MATTED HAIR FOUND IN STOLEN AUTOMOBILE OF DECEASED—PROPER EVIDENCE.—In such prosecution, the admission in evidence of locks of matted hair adhering to something which appeared to be parts of a human scalp found in the automobile

5. Opinions gained from newspapers as disqualifying jurors in criminal case, note, 35 L. R. A. (N. S.) 988.

where defendant abandoned it, and shown to be of the same color as the hair of the deceased, was proper, without further evidence showing the hair to be in the same condition as when taken from the automobile.

[9] Id.—Instruction—Duty of Jurors.—An instruction that unless the jury did their duty, laws might as well be stricken from statute books is not to be construed as a direction that they should find the defendant guilty, and that they would be neglectful of their duty if they did not do so, where as part of the same instruction the jury was advised that both the public and the defendant had the right to demand and expect a careful and dispassionate consideration of the law and the evidence and the rendition of a verdict just to both sides.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jackson Mahon and W. W. Laidley for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

SHAW, J.—Upon a charge by information the defendant was convicted of the crime of murder of the first degree and thereupon sentence of death was imposed upon him. The appeal is from the judgment of conviction.

In support of his appeal he urges seven grounds. We will consider them in the order in which they are presented.

1. At the time the defendant was brought before the magistrate for the preliminary examination upon the charge it was suggested in his behalf that he was under the age of eighteen years at the time the crime was alleged to have been committed. The magistrate examined into the matter and determined that he was less than sixteen years of age at that time. Thereupon he suspended the proceedings and ordered the constable to take the defendant before the juvenile court of the county for its consideration under the juvenile court law. In the superior court, by direction of the court a petition was filed by the probation officer to bring the defendant within the terms of the probation law. (Section 3.) Thereupon the court took evidence relating to the character of the defendant and the nature of the

crime charged against him, and made an order finding that he was under the age of twenty-one years, but that he was not a fit subject for further consideration under the terms of the juvenile court law, and adjudged that he be remanded to the justice's court in which the charge of murder was pending for further proceedings on said charge, and that the proceedings under the Probation Act be dismissed. All these proceedings were taken under the provisions of the juvenile court law. (Gen. Laws, p. 747, Act 1770a, sec. 6.) Thereafter the magistrate proceeded with the preliminary examination, the defendant was duly committed, and the information upon which he was tried and convicted was then filed.

.The claim is now made that under the provisions of the juvenile court law, after the magistrate had determined that the defendant was less than eighteen years of age, and the matter then came before the superior court for proceedings under that law, the superior court was without power to remand him to the magistrate for further proceedings on the criminal charge. The claim is, in effect, that a person under eighteen years of age cannot be prosecuted or punished for the crime of murder and that he can be dealt with only as a ward of the juvenile court.

We do not think this proposition is sustained by the law. Section 6 provides that when, upon a charge of crime against a person, it shall appear to the magistrate that the defendant was under eighteen years of age at the time the alleged crime was committed, he shall suspend the proceedings upon the charge and inquire into the age of the defendant, and if he finds that the defendant was under eighteen he shall thereupon certify to the juvenile court the fact of such finding and that proceedings have been suspended by reason thereof, and that thereupon all proceedings against the person on the charge shall be suspended until the juvenile court shall issue its mandate directing the magistrate to proceed with the examination or trial. It then provides that in the superior court, acting as a juvenile court, a petition shall be filed to bring the defendant within the provisions of the law and "that if said judge of the juvenile court shall after such investigation decide that the person was at the time said offense was alleged to have been committed of the age of eighteen years or more, such determination shall be con-

clusive and he shall immediately issue his mandate directing the court before which such charge is pending to proceed therewith, and upon receipt of such mandate said court shall proceed with the examination or trial of said charge as though no suspension thereof had taken place; except that if said judge of the juvenile court shall find that the person so charged is under the age of twenty-one years, and a fit subject for consideration under the provisions of this act, he may make such order or orders hereunder as he may deem best in relation to such person; but if such judge shall at any time conclude that such person is not a fit subject for further consideration under this act, he may sit as a committing magistrate and hold a preliminary examination if such person is charged with a felony, or he may remand such person to the court in which said person is charged with said offense for further proceedings on said charge, and upon receipt of the mandate of said juvenile court, or the judge thereof, the court before which said charge is then pending shall be vested with full authority to proceed with the examination or trial thereof.'' The precise claim of the defendant is that under these provisions the magistrate of the juvenile court cannot remand the defendant to the magistrate for examination or trial unless he shall find that the defendant is over eighteen years of age, and that it prohibits further proceedings by the magistrate upon the original charge, where the juvenile court shall find that he was under that age. [1] To this we do not agree. The quoted passage must be read in connection with some of the preceding provisions of the act. Section 1 declares that ''this act shall be known as the 'juvenile court law' and shall apply to any person under the age of twenty-one years.'' It then describes fourteen classes of persons who shall be subject to the provisions of the act, if under the age of twenty-one years. Class 13 includes any person ''who violates any law of this state or any ordinance of any town, city, county, or city and county of this state defining crime.'' Section 4c of the act provides that if, upon the hearing of a petition for proceedings under the juvenile court law as provided in section 3, the court shall determine ''that any person alleged to come within the provisions of subdivision 13 of section 1 of this act, is not a fit and proper subject to be dealt with under the provisions of this act,

said court may dismiss the petition therein, and direct that said person be prosecuted under the general law.'' Section 4d provides that no person under the age of eighteen years at the time of the commission of a crime shall be prosecuted for the crime until the matter has first been submitted to the juvenile court as in the act provided. These provisions clearly imply that a person under the age of eighteen years may nevertheless be prosecuted for a crime, notwithstanding the fact that he has invoked the application of the juvenile court law to his case. The provision of section 6, above quoted, taken in connection with the other provisions, can only mean that upon the hearing of a case which had been under examination before a magistrate upon a charge of crime and has been certified to the juvenile court because of the age of the defendant, if the juvenile court shall conclude that such person ''is not a fit subject for further consideration under the act'' it may remand him to the magistrate for examination or trial, regardless of the question whether he is over or under eighteen years of age. This being the case the magistrate would have jurisdiction as provided in the part of section 6 which we have quoted, to proceed with the examination and upon finding sufficient cause therefor to commit him upon the charge.

2. In certifying the cause to the juvenile court after finding that the defendant was under eighteen years of age, the magistrate, it is claimed, failed to attach to the certificate a certified copy of the original deposition or complaint filed before him. Section 6 of the Juvenile Court Act provides that he shall do this. It is contended that this omission deprived the court of jurisdiction. [2] We do not think the requirement was intended to be jurisdictional. The clause requiring such copy to be attached is obviously merely directory in character and effect, the object being to apprise the juvenile court of the nature of the charge. [3] Furthermore, the objection is not properly in the record before us. The defendant should have made it a part of the record, either by a bill of exceptions or by some special order of the court. Section 1246 of the Penal Code enumerates minutely the papers which shall constitute the transcript on appeal. The certificate of the magistrate and proceedings remanding the defendant to the juvenile court

and by the juvenile court back to the magistrate for further action are not thereby required or authorized to be made a part thereof. The record does not show that the court made any order requiring the phonographic reporter to include the same in the transcript of his notes. Without such order the phonographic reporter would not be authorized to include these papers in his transcript and he has not done so. Moreover, there was no foundation upon which the objection can be raised on appeal. This objection would not, at most, constitute a ground of objection, except upon motion in the superior court to set aside the information, or in the juvenile court to arrest the proceedings there upon that ground. It does not appear that any such motion was ever made. We do not intend to say that it would, even on such motion, be ground for setting aside the information. [4] As the case stands, the defendant has waived the objection, even if it had any merit.

3. The defendant claims prejudicial error in rulings of the court overruling his challenges for cause to two of the jurors. The challenges were made on the ground of actual bias as defined in subdivision 2 of section 1073 of the Penal Code. Section 1076 provides that under such a challenge a person shall not be disqualified as a juror by reason of having formed or expressed an opinion upon the guilt or innocence of the defendant founded upon public rumor, statements in public journals, or common notoriety, if it appear to the court, upon his examination that he can and will, notwithstanding such opinion, act impartially and fairly upon the matter. Juror Heimforth, upon his examination, testified that he had read the newspaper accounts of the crime and had therefrom formed an opinion as to the guilt or innocence of the defendant, which it would take evidence to remove. Upon further examination, however, he stated that his opinion was formed entirely upon what he had read in the newspapers, that he had no other knowledge or information about the matter and that, notwithstanding that opinion, he could, and would, if sworn as a juror, lay it aside, consider the case entirely upon the evidence produced in court and act impartially and fairly in the case. Juror Blaisdell testified that he knew nothing of the case except what he had read in the newspapers, that he had formed an opinion therefrom which the evidence might

remove, but that, notwithstanding the opinion, he could, and would, act fairly and impartially upon the charge against the defendant and be guided solely by the evidence produced in court in arriving at a verdict. He further stated that he would retain the opinion until he heard the evidence, that after it had once gotten into his mind he could not put it out until something occurred to change it, but that he could go into the trial of the case presuming the defendant innocent and depend entirely upon the evidence introduced and the instructions of the court in finding a verdict, and would not in any way permit the matter that he had read in the newspapers to influence his decision. [5] The court, upon this testimony, was justified in holding that the jurors were qualified. A juror who has formed a tentative opinion in that manner will usually say that it will require evidence to change the opinion. That fact is not incompatible with ability to disregard such opinion entirely in weighing the evidence and to render a verdict solely upon that evidence. This psychological fact was recognized by the legislature and section 1076 was enacted to avoid the necessity of sustaining challenges for actual bias in such cases. Its effect is that this state of mind does not disqualify the juror, if, notwithstanding such mental condition he can and will act impartially and fairly in the case.

4. During the examination of the jurors the district attorney put the following question:

"Well, supposing the court should further instruct you that if you find from the evidence that the killing was done and that it was done by the defendant in an attempt to perpetrate or in the perpetration and commission of the felonies that I have mentioned, one of which was robbery, that you would have no option in the matter, but that you should find the defendant guilty of murder in the first degree would you follow that instruction? A. Yes, sir." Questions of somewhat similar purport were put to eleven other jurors who were examined.

Defendant claims that these questions were unfair because they did not advise the jury that the guilt must be shown to a moral certainty and beyond all reasonable doubt, and that the many repetitions of similar questions would leave the impression with the jury that the court would instruct them that the killing was done by the defendant in the

perpetration of a felony. He assigns the putting of the questions as misconduct on the part of the district attorney. [6] A reading of the entire examination shows that there was no misconduct. The district attorney in his questions to the jurors repeatedly stated that the court would instruct them that they could not convict the defendant of the charge unless they should be satisfied of his guilt beyond a reasonable doubt from the evidence produced before them. The court did so instruct them at considerable length and they must have clearly understood the rule. The question itself was plainly conditional, and did not assert that the court would so instruct them. The principle embodied in the question, aside from the proposition that the guilt must be proven beyond a reasonable doubt, is but a restatement of the definition of murder contained in the Penal Code. (Pen. Code, secs. 187, 189.) It is substantially a repetition of the law as laid down in *People* v. *Milton*, 145 Cal. 169, [78 Pac. 549], and *People* v. *Witt*, 170 Cal. 107 [148 Pac. 928]. It was not intended as a complete definition and we need not say that it may be so considered, but in connection with the other questions put to the jurors we do not think that it constitutes misconduct or that it could have prejudiced the defendant, especially in view of the fact that the court very fully instructed the jury with regard to the elements of the crime of murder. The question itself merely amounted to an inquiry whether or not the juror would follow the instructions of the court.

5. The defendant was charged with the murder of one Elmer Greer. The evidence showed that Greer was operating an automobile for hire; that on May 26, 1919, the defendant hired Breer and his automobile for a trip, and that while on the trip the defendant stealthily hit Greer on the head three times with a hammer. Each blow made a round indentation in the skull, forcing the bone into the tissue of the interior of the skull. From these wounds Greer died on May 29, 1919. On the trial one Delbert E. Bellus, on behalf of the prosecution, testified on direct examination that on May 26, 1919, he helped Greer aboard a train running from Maricopa to Bakersfield, that Greer then had wounds on the head, that he bathed Greer's head and face several times during the journey to Bakersfield and there left him at the station. On cross-examination the witness was asked

many questions as to the details of the journey to Bakers-
field and the condition of Greer. The following is a part
of the cross-examination: "Did you talk with him at that
time? A. Oh, some. Q. How was he as to his speech, was
he rational or not? A. At first he was so weak he couldn't
say much. All he could say was, 'I got an awful beating.'
Q. He was able to talk? A. Yes, he could talk. Q. And
you talked to him on the way in? A. Oh, some; I was in
and out all the time." In answer to other questions he said
that Greer looked better by the time he got to Bakersfield
and "talked better." On redirect examination the district
attorney showed the witness a transcript of his testimony at
the preliminary examination, to refresh his memory of the
conversations with Greer, and asked: "Would your memory
be any better than it is now what Mr. Greer said at that
time?" To this the defendant's attorney objected on the
ground that it was not proper redirect examination, and that
it was cross-examination of the people's own witness. The
objection was overruled. Thereupon the district attorney
elicited testimony to the effect that Greer said that he had
been hit on the head, referring to the beating. The witness
was again asked to examine his previous testimony to refresh
his recollection on the subject. To this the defendant re-
peated the previous objection, and added the objection that
the testimony was irrelevant, incompetent, and immaterial.
The objection was overruled and thereupon the witness, after
reading his previous testimony, stated that Greer had in-
formed him that he was hit on the head with a hammer,
and that his money and automobile were taken away from
him. On recross-examination he further testified that Greer
told him that he did not know who had hit him. No other
objection was made to this testimony, and no motion was
made to strike it out.

[7] The defendant claims that this was error and that it
was very prejudicial to his case. In view of the testimony
on the cross-examination, it cannot be said that it was not
within the scope of a fair redirect examination. But the
statement of the witness on the cross-examination as to what
Greer said was not technically responsive to the question,
but was a voluntary statement. This point was not em-
braced in the objection. The evidence was obviously hearsay
and incompetent, however, and the redirect examination

CLXXXII Cal.—47

should not have been allowed, if the proper objection had been made. But however this may be, the evidence was not prejudicial. The truth of the statements by Greer to the witness was fully established by other uncontradicted evidence. After his arrest the defendant made a full and voluntary confession to the chief of police at Bakersfield, in which he stated the same facts that were elicited on the redirect examination objected to. They were also clearly proven by other satisfactory evidence circumstantial in nature, but not contradicted. The defendant did not testify in his own behalf and introduced no evidence tending to disprove his guilt. The other evidence of the defendant's guilt leaves it in no reasonable doubt. It is plain from the entire case that it did not result in a miscarriage of justice and consequently, under section 4½, article VI, of the constitution, it would not be sufficient cause for reversal.

[8]   6. The court admitted in evidence two locks of matted hair adhering to something which appeared to be parts of a human scalp, together with testimony that they were found in Greer's automobile at Livingston station near Merced, where defendant had abandoned it, and had boarded the train for Oakland, the morning after the homicide. Testimony was given to the effect that this hair was of the same color as the hair of Greer. The witness Corbett testified that he found the hair in the automobile soon after the defendant abandoned it, and that he gave the hair to Officer Pyles. Pyles produced the hair and testified that Corbett had given it to him, that he had known Greer for a number of years and that this hair was the same color as that of Greer. The locks of hair were then offered in evidence and admitted over the defendant's objection that "no proper foundation had been laid." It is now claimed that it was error to admit this evidence without further evidence showing that its condition was the same at the time of its admission as it was when it was taken from the automobile, and that it was introduced in order to arouse the passion and prejudice of the jury. The defendant made no attempt to show that the hair was in a different condition at the time of its introduction in evidence from its condition at the time it was found, and it is not claimed that its natural color had been changed. There is no presumption that these articles had been changed in any way for any purpose, and

we find nothing in the record to indicate that the district attorney introduced the evidence for any improper purpose. They were properly admitted.

7. The court gave the following instruction:

"You are here, gentlemen, for the purpose of trying the issues of fact that are presented by the allegations in the information filed by the district attorney and the defendant's plea thereto. This duty you should perform uninfluenced by pity for the defendant, or by passion or prejudice on account of the nature of the charge against him. You are to be governed therefore solely by the evidence introduced in this trial and the law as given by the court. The law will not permit jurors to be governed by mere sentiment, conjectures, sympathy, passion or prejudice. A verdict founded upon sentiments of pity for the accused, or upon public opinion or public feeling, or upon passion or prejudice, or upon conjectures, would be a false verdict. You will not take counsel of them in deliberating upon your verdict. The importance of your duties requires that you consider the right of the people of the state of California to have the laws properly executed, and that it is with you, citizens selected from the county, that finally rests the duty of determining the guilt or innocence of those accused of crime, and unless you do your duty, laws may as well be stricken from statute books."

The defendant argues that the last sentence of the instruction, in effect, directed the jury that they should find the defendant guilty, and if they did not do so they would have neglected their duty. As a part of the same instruction and immediately following the above extract the court said: "You should also ever keep in mind the importance to the accused of the result of your deliberations and be just to him, as well as to the people of the state of California. Both the public and the defendant have a right to demand, and they do so demand, and expect, that you will carefully and dispassionately weigh and consider the evidence and the law of the case and give each your conscientious judgment; and that you will reach a verdict that will be just to both sides, regardess of what the consequences may be." The instructions, and particularly a single instruction, must be considered as a whole. [9] We cannot perceive wherein the court in this instruction in any respect misdirected the

jury as to their duty, and we do not think that it could have been understood by the jury as a direction that they would have been neglectful of their duty if the defendant was not convicted.

The defendant does not claim that the evidence is not sufficient to support the verdict, and it is therefore unnecessary to consider the same. We have examined it, however, and find that it clearly establishes his guilt of a cold-blooded, mercenary, deliberate and willful murder.

The judgment is affirmed.

Wilbur, J., Lawlor, J., Lennon, J., Olney, J., and Angellotti, C. J., concurred.