[Crim. No. 801.  Second Appellate District, Division Two.—October 5, 1921.]

## THE PEOPLE, Respondent, v. JUANITA CASANOVA, Appellant.

[1] CRIMINAL LAW—PERJURY—CORROBORATIVE EVIDENCE—IDENTITY OF EVIDENCE.—In a prosecution for perjury alleged to have been committed by the defendant in the course of her testimony on the trial of a criminal action wherein she was charged with maintaining a disorderly house for the purposes of assignation and prostitution, section 1103a of the Penal Code does not require that each witness have seen the same acts of immorality or have heard the same identical admissions that defendant made respecting her knowledge of the use that prostitutes made of a given room in her hotel.

[2] ID. — QUANTUM OF EVIDENCE REQUIRED. — Section 1103a of the Penal Code, respecting the *quantum* of evidence necessary in perjury cases, will be satisfied if there be the testimony of one witness to facts that are absolutely incompatible with the innocence of the accused, corroborated by circumstances which, of themselves, and independently of such directly inculpatory evidence, tend, with a reasonable degree of certitude, to show that the accused is guilty as charged.

[3] ID. — IMPEACHMENT OF INDICTMENT — FRIENDSHIP BETWEEN GRAND JUROR AND PUBLIC OFFICIAL.—In a prosecution for perjury alleged to have been committed by defendant in the course of her testimony on the trial of a prior criminal action, the court does not commit error in sustaining the prosecution's objections to an offer or attempt to prove by the foreman of the grand jury that returned the perjury indictment that a close political relationship between such witness and the sheriff, the object of such attempted offer and proof being to create the inference that the indictment was the outgrowth of a desire to aid the sheriff in his defense to a malicious prosecution action which defendant brought against that official following her acquittal of the prior criminal charge.

[4] ID.—FINALITY OF INDICTMENT.—An indictment is the record of the action of a judicial body, and such action is final when no appeal therefrom, nor other method for reviewing it, is provided by statute.

[5] ID.—EVIDENCE—IMPEACHMENT OF INDICTMENT.—Though a party to an action may show, by proper evidence, the hostility, bias, or interest of any witness called to testify against him, an indictment cannot be impeached during the course of trial of the issues presented thereby by showing an alleged improper motive for its finding and presentment.

[6] ID. — IMPEACHMENT OF WITNESS — IMMORAL CONDUCT. — A witness for the prosecution may not be impeached by proof that at a given place, at a time prior to the happening of the events covered by her testimony, she had had sexual intercourse with each of four men.

[7] ID.—OMISSION TO STATE FACTS AT PREVIOUS HEARING.—The mere omission to state a fact, or stating it less fully, before the grand jury, is not sufficient to render the transcript of the witness' testimony before the grand jury admissible to impeach the witness on that ground, unless his attention had been particularly called to such fact in the grand jury room and he was there asked to testify concerning the very facts embraced in the questions propounded at the trial. ·

APPEAL from a judgment of the Superior Court of San Diego County. E. A. Luce, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. J. Morganstern for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy Attorney-General, and John W. Maltman for Respondent.

FINLAYSON, P. J.—Defendant appeals from a judgment of conviction upon an indictment charging her with perjury and from an order denying her a new trial. The perjury is alleged to have been committed by her in the course of her testimony on the trial of a criminal action wherein she was charged with maintaining a disorderly house for the purposes of assignation and prostitution.

At all the times mentioned herein defendant kept and maintained a hotel in the city of San Diego known as the New Mexico Hotel. On December 20, 1920, by a criminal complaint filed in the justice's court of the city of San Diego, it was charged that the defendant there, who is likewise the defendant and appellant here, did, on or about December 18, 1920, keep, conduct, and maintain said New Mexico Hotel for the purposes of assignation and prostitution, and did then and there rent a room therein knowing that it was to be used for the purposes of assignation and prostitution. On the trial of that charge the defendant, after having been duly sworn as a witness, testified that she did not know of any room in her hotel ever being rented

for immoral purposes or for purposes of assignation or immoral conduct. She was acquitted of the charge so preferred against her in the justice's court, and shortly thereafter the grand jury for San Diego County indicted her for perjury, of which she was convicted. Hence this appeal.

It is contended that the evidence is not sufficient in that the charge of perjury is not made out by the testimony of two witnesses, or of one witness and the necessary corroboration required by the statute—Penal Code, section 1103a. Two witnesses, Juan Garcia and Jennie Garcia, husband and wife, testified for the people. Jennie Garcia testified in substance as follows: My husband and I occupied room 7 in the New Mexico Hotel for a week, commencing December 11, 1920. Mrs. Casanova, the defendant, was running the hotel. On the night of December 11, 1920, Mrs. Casanova told me that room 9 in the hotel was a room "just for the girls." One evening during the week that my husband and I were there I heard Mrs. Casanova call Mrs. Lucille Roderiquez, who lived in a house near by. Mrs. Casanova told Mrs. Roderiquez to come over, that she had a man waiting there for her. Mrs. Roderiquez came over and went to room 9. A man went in the room with Mrs. Roderiquez. I did not notice how long they stayed. On another occasion during that week I saw Mrs. Roderiquez with another man in bed in room 9. On another occasion during the week between December 11th and 18th Mrs. Casanova "told me about what she had that room for, and that was that she had a room for the girls, and that she had that fixed up for the girls if the policeman walked up that she had the back door all ready, if the policeman was coming there to get the girls that she had everything fixed up so the girls could go to the back way." She told me the room was "for the girls to do business in." She also said to me that the charge for the men doing business with the women there was two dollars, and that she was to have fifty cents out of the two dollars. Whenever the girls forgot to give her the fifty cents she came and collected it; she would call the girls and say, "Why listen, you owe me those fifty cents." During the time I was in the hotel, between December 11th and December 18th, I saw different men go into room 9 with Lucille Roderiquez. I don't remember how many, but different men, colored peo-

ple, Mexicans, Americans, and Indians. While I was there I saw as many men visit the Rogers woman as I saw visit Mrs. Roderiquez. I saw the Rogers woman with men in room 9. Mrs. Casanova told me that that room was used by these two women. Juan Garcia, the husband of the former witness, testified in substance as follows: While myself and wife were at the New Mexico Hotel during the week from December 11th to December 18th, men would sometimes come and ask Mrs. Casanova for girls and she sent them to room 9. The girls used to charge two dollars. Sometimes the men asked Mrs. Casanova how much the girls charged and she says two dollars. After I would hear this talk between the men and Mrs. Casanova, the men went to room 9, sometimes. This witness also testified that upon one occasion during his stay at the New Mexico Hotel he saw a man in bed with the Roderiquez woman in room nine.

[1] We think it clear that the testimony of these two witnesses was sufficient. Though Jennie Garcia and her husband were not together upon any of the occasions when either of them saw or heard the particular occurences to which each of them testified, it was not necessary, as counsel for appellant seems to assume, that each witness should have seen precisely the same acts of immorality or have heard the same identical admissions that defendant made respecting her knowledge of the use that prostitutes made of room 9 in her hotel. On her trial in the justice's court defendant testified that she never knew of any room in her hotel ever having been rented for an immoral purpose or for the purpose of assignation or immoral conduct. She, therefore, is guilty of perjury if a room in her hotel was rented for such immoral purposes and if she had knowledge thereof. If there be legal evidence sufficient to establish these two facts—the renting of a room for immoral purposes and defendant's knowledge thereof—the falsity of the testimony given by defendant on her trial before the justice of the peace is made out and she is proved guilty of perjury. That there was such legal evidence, sufficient to meet the requirements of the statute, we have no doubt. [2] The statute respecting the *quantum* of evidence necessary in perjury cases will be satisfied if there be the testimony of one witness to facts that are absolutely incompatible with the innocence of the accused, corroborated by circumstances

which, of themselves and independently of such directly inculpatory evidence, tend, with a reasonable degree of certitude, to show that the accused is guilty as charged. ''Upon a trial for perjury direct evidence is not limited to a denial *in ipsissimis verbis* of the testimony given by the defendant, but includes any ·positive testimony of a contrary state of facts from that sworn to by him at the former trial, or which is absolutely incompatible with his evidence, or physically inconsistent with the facts so testified to by him.'' (*People* v. *Chadwick,* 4 Cal. App. 70 [87 Pac. 387].) See, also, *People* v. *Parent,* 139 Cal. 600 [73 Pac. 423], and *People* v. *Hill,* 36 Cal. App. 574 [172 Pac. 1114]. The testimony of Jennie Garcia was direct and positive that she saw the Roderiquez woman in bed with a man in room 9. She also saw different men, Mexicans, Indians, and colored men, go into room 9 with the Rogers woman, as well as with Lucille Roderiquez. She gave direct evidence as to what was said to her by defendant regarding these occurrences— what was said by defendant concerning the use made of · room 9, the amount charged by these prostitutes and defendant's share of the nefarious gains. Such testimony, if true, directly established facts that are absolutely incompatible with the truth of defendant's testimony on her trial in the justice's court to the effect that she never knew of any room in her hotel having been rented for immoral purposes. The facts testified to by Juan ·Garcia—that men would sometimes come and ask Mrs. Casanova for girls, that she would tell them what the girls charged, that she would send the men to room 9, that he saw men go to that room, and that once he saw a man in room 9 in bed with the Roderiquez woman—of themselves, without the aid of the inculpatory evidence given by Jennie Garcia, tended to show that a room in the hotel was rented for immoral purposes and that defendant knew that it was so rented, thus corroborating his wife's testimony by sufficient corroborating circumstances—if, indeed, his evidence was not corroborative of his wife's by direct and positive testimony to the *corpus delicti.* The evidence for the prosecution was every whit as strong as that in *People* v. *Parent, supra,* and was clearly sufficient to justify the verdict.

[3] Following defendant's acquittal in the justice's court of the charge of maintaining a disorderly house, she brought

an action against the sheriff for malicious prosecution. Thereafter this indictment for perjury ·was presented by the grand jury. On the trial of the present action counsel for defendant put the foreman of the grand jury on the witness-stand and offered to prove that there was a close political relationship between the witness and the sheriff. The avowed object of this offer was to create the inference that the indictment was the outgrowth of a desire to aid the sheriff in his defense to the malicious prosecution action which defendant had brought against that official. Needless to say, this offer was promptly rejected. And though counsel was later permitted to propound to the witness one or two questions in line with his offer, the questions and answers were subsequently stricken out. In this the court did not err. [4] An indictment is a record of the action of a judicial body, and such action is final when no appeal therefrom, nor other method for reviewing it, is provided by statute. (*In re Kennedy,* 144 Cal. 634 [103 Am. St. Rep. 117, 1 Ann. Cas. 840, 67 L. R. A. 406, 78 Pac. 24] ; *Brobeck* v. *Superior Court,* 152 Cal. 289 [92 Pac. 646] ; *People* v. *Panagoit,* 25 Cal. App. 158 [143 Pac. 70].) We know of no provision in the law of this state that permits a grand juror, during the trial of the case on its merits, thus to impeach an indictment that has been found to be a true bill by the grand jury and presented in open court as such. See note to *United States* v. *Tallmadge,* 20 Ann. Cas., p. 47 et seq.

Defendant assigns as error the court's refusal to permit her to introduce in evidence the record in her action against the sheriff for malicious prosecution. The avowed purpose of this offer was to show "the motive behind the prosecution." [5] Though a party to an action may show, by proper evidence, the hostility, bias, or interest of any witness called to testify against him, it is too clear to require the citation of authority that an indictment cannot be impeached during the course of trial of the issues presented thereby by showing an alleged improper motive for its finding and presentment.

[6] In the course of the cross-examination of the people's witness, Jennie Garcia, she was asked by defendant's counsel if, at a place called Barrett Dam, she had not had sexual intercourse with each of four men, one of whom was

J. de Torres. She answered in the negative. Later, defend-
ant put de Torres on the stand as a witness for the defense
and offered to prove by him and other witnesses that on
September 4, 1920, he, in company with Jennie Garcia,
drove from Barrett Dam to defendant's hotel in the city of
San Diego, and that upon that occasion Jennie Garcia cau-
tioned him not to tell defendant about her alleged conduct
with men at Barrett Dam because she lived at defendant's
hotel when in the city of San Diego and she did not want
defendant to know what had been her relations with men.
In its refusal to permit defendant's counsel to pursue this
line of examination the court did not err. We are informed
that the purpose of the offered testimony was to show the
regard in which the witness Jennie Garcia held the defend-
ant and her hotel, and that she cautioned these men not to
speak to defendant about her actions with them because she
did not want defendant to know of her immoral conduct.
This excuse for the offer notwithstanding, we are unable to
find in the proposed testimony aught than an attempt to im-
peach the witness in a manner not warranted by the rule
of evidence codified in section 2061 of our Code of Civil
Procedure. The Garcia woman's conduct some months prior
to the week commencing December 11, 1920, when she and
her husband lived at defendant's hotel, and her alleged
statements respecting such prior conduct, made more than
three months prior to the time when defendant is alleged
to have maintained a disorderly house, can have no ten-
dency to disprove her testimony as to what she heard and
saw during the week commencing December 11, 1920, save
as such prior conduct and statement may tend to impeach
her by showing that she herself was a woman of loose morals.
But a witness cannot be thus impeached. A witness may be
expected to come to the stand prepared, if necessary, to de-
fend his or her general reputation for truth, honesty, or in-
tegrity, or to defend against a charge that he or she has
been convicted of a felony; but no witness is expected to
come to the witness-stand prepared to meet any of the in-
numerable possible charges of specific wrongdoing which,
though groundless, malice or self-interest might see fit to
prefer.

[7] On the cross-examination of the people's witness, Juan Garcia, the court sustained an objection to the introduction by defendant of the transcript of the witness' testimony before the grand jury. The announced purpose of this offer was to show that when he gave his testimony to the grand jurors, Garcia failed to state that he had seen a man in bed in room 9 with the Roderiquez woman. Our code prescribes as one of the methods of discrediting a witness the following: "A witness may also be impeached by evidence that he has made, at other times, statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them." (Code Civ. Proc., sec. 2052.) The witness' omission to tell the grand jurors that he had seen a man in bed with the Roderiquez woman at defendant's hotel is not a discrepancy in his testimony at the trial unless it clearly appears that his attention was specifically called to the matter in the grand jury-room, and that he was there asked to testify concerning the very facts embraced in the questions propounded at the trial. Thus, in *Commonwealth* v. *Hawkins,* 3 Gray. (Mass.), 463, the defendant being on trial charged with murder, his counsel sought to show by the depositions of certain adverse witnesses, taken before the coroner, that they had there omitted material facts to which they had testified at the trial, and insisted that the latter testimony was so important that the witnesses could not, consistently with the operation of an active memory and the promptings of a good conscience, have omitted such facts at the inquest and remember them at the trial. But it was held that the mere omission to state a fact, or stating it less fully, before the coroner, was not sufficient to render the depositions admissible to impeach the witnesses upon that ground, unless their attention had been particularly called to such facts at the inquest. (See, also, *State* v. *Ogden,* 39 Or. 195 [65 Pac. 449]; *State* v. *Gulliford,* 76 Or. 231 [148 Pac. 876], and *State* v. *Mosca,* 90 Conn. 381 [97 Atl. 340].) If inquiries were put to Juan Garcia in the

grand jury-room which had the effect of calling his attention to the question whether he had seen a man in bed with the Roderiquez woman, those inquiries, and the witness' answers thereto, should have been read to him on the witness-stand. That is the only manner in which he could have been impeached, within the rule we have already stated. The fact that such questions and answers were or that they were not contained in the transcript of his testimony would not justify the offer of the entire document.

Criticism is made of an instruction admonishing the jury as to their duties. We cannot see wherein the court misdirected the jury. The charge, when considered as a whole, does not indicate any hostility on the part of the court toward the defendant. An instruction substantially identical in character is commented upon in *People* v. *Wolff*, 182 Cal. 728 [190 Pac. 22], and held not to be prejudicial.

We can see no reason for concluding that the jury may have been misled by the instruction given in regard to circumstantial evidence. The point of the criticism is that a certain instruction, conceded to be a correct statement of the law as an abstract proposition, tended to mislead the jury because, in this case, so it is claimed, no dependence was placed upon circumstantial evidence. The objection is grounded upon an erroneous assumption. Much of the evidence adduced by the prosecution was circumstantial. For instance, the witness Juan Garcia testified that sometimes, after hearing a man ask defendant how much the girls charged, he would see the man go into room 9. This was circumstantial evidence of a very strong character, tending to show that, to defendant's knowledge, a room in her hotel was rented for immoral purposes.

Complaint is made of the refusal of the court to give certain instructions requested by defendant. A comparison of these instructions with those given by the court discloses that the latter fully cover the substance of those requested. There was, therefore, no necessity for repetition, and appellant was not prejudiced by the refusal to charge the jury in the language requested by her.

On the whole case, we see no ground for interfering with the judgment. An examination of the record shows that there was sufficient evidence to justify the verdict, and that

defendant was accorded every substantial right by the learned judge of the trial court.

The judgment and the order denying a new trial are affirmed.

Works, J., and Craig, J., concurred.