[Crim. No. 2397. First Dist., Div. One. Jan. 8, 1947.]

THE PEOPLE, Respondent, v. WARDELL TUCKER, Appellant.

562

Carl E. Brown for Appellant.

Robert W. Kenny, Attorney General, Carl W. Wynkoop and Dennis Hession, Deputy Attorneys General, Edmund G. Brown, District Attorney, and Alvin E. Weinberger, Assistant District Attorney, for Respondent.

SCHOTTKY, J. pro tem.—Appellant Tucker was charged by the information with the crime of robbery. It was alleged that he, on or about August 9, 1945, did unlawfully take from the person and presence of one Glen B. Roberts, $4,000. He was alleged to be one of three colored men who, about 2:45 a. m. on August 9, 1945, held up and robbed the Municipal car barn at McAllister Street and Masonic Avenue, San Francisco, of approximately $4,000 in cash and 10,000 streetcar tokens. The other two men accused were Leonard Thompson and Chester Harris, and the trials of all three were ordered consolidated by the court. After the jury was selected, Harris changed his plea to guilty and the trial proceeded as to Thompson and Tucker. The jury found both of the defendants guilty of robbery in the first degree. The court denied the appellant's motion for a new trial. From the judgment sentencing appellant Tucker to imprisonment in San Quentin for the period prescribed by law, this appeal is taken.

At the time of the robbery Glen B. Roberts, the acting dispatcher, and Velma Major, a conductorette, were in the car barn. Roberts was working in the cashier's office while Mrs. Major was in the gilley room making up her account. The cashier's office is on the north side of the gilley room and is separated from it by a glass frame partition. In the center of this south wall of the office is the dispatcher's window.

Roberts testified that at approximately 2:43 a. m. on August 9, 1945, and while he was standing at the dispatcher's window, a colored man (identified as Harris), came up and asked him what time he could get a street car downtown. After receiving his answer he started away, and as Roberts started to turn around another colored man (identified as defendant Thompson), stuck a gun in his back and grabbed him around the neck with his arm. Roberts lost his balance and was made to lie flat on his stomach with his hands out in front of him. His wrists were then taped together by Thompson.

Thompson evidently had got in through the west door, and Thompson then opened the east door to the cashier's office and defendant Harris came in. These two men then began throwing the money bags into a large canvas satchel. The money, together with 10,000 tokens, was carried outside. They made several trips for this purpose. They also removed a double-barreled shotgun. Roberts could not say there was a third man present during the robbery.

However, the witness Mrs. Major testified as follows: She had completed her run at 2:11 a. m. She then took her fare box into the gilley room to fix her accounts. As she stood working at a table, and at approximately 2:31 a. m. a colored man came in through the sliding door in the south wall of the gilley room. His face was painted. He passed out of sight behind some lockers. She continued to count her money and then another colored man (identified as Harris) came in and began to speak to the dispatcher. He asked about getting a car downtown and then thanked the dispatcher and turned to leave the building. At this time a third colored man entered the gilley room through the sliding door on the south wall. This man told her to get on the floor. She didn't say anything; she looked at him, because it was something unusual to her. He said: "I told you to get on the floor," and pulled a gun out of his pocket, and put it on her and told her to get on the floor, and she then got on the floor. She identified this third man as the defendant and appellant Tucker. She lay on the floor approximately a minute or so and then sat up on the floor. She could see two men moving backward and forward in the office, but could not tell what they were doing as the walls were high. She saw them as they left through the gilley room. She identified them as defendants Harris and Thompson. She also testified that Tucker kept his gun on her as long as the other two men were in the office, about five to seven minutes. Tucker had no paint on his face and there was no doubt in her mind as to his identity. After she sat up on the floor she could see Tucker at all times. After the defendants were arrested, Mrs. Major was called to the Hall of Justice. She was shown three photographs and identified Tucker's. She was also shown Tucker. He was brought out alone and the police asked her if this was the man. She then identified him as the man who held the gun on her. There was no doubt in her mind as to his identity.

Appellant Tucker denied any complicity in the robbery, and claimed that he was in Bakersfield on the night in question. He produced four witnesses whose testimony was to the effect that Tucker was in Bakersfield on the night of the robbery. However, a reading of the testimony of these witnesses discloses an element of uncertainty on their part as to the exact date that they saw appellant in Bakersfield, and their testimony was no doubt rejected by the jury because of the positive identification of appellant by Mrs. Major and the other testimony.

Appellant urges numerous grounds for a reversal of the judgment, the first of which is that the evidence is insufficient to support the verdict of guilty. In view of the evidence hereinbefore set forth, and without detailing any of the additional evidence in the record, it is clear that this contention is without merit. The testimony of Roberts and of Mrs. Major is in itself sufficient, and in the face of such testimony it cannot be said that the verdict of the jury was without substantial support in the record. As was said in *People* v. *Quinn,* 12 Cal.App.2d 752 at page 754 [55 P.2d 277] : ''Reviewing judges are, obviously, in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. Undoubtedly for that reason our Constitution provides that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. (*People* v. *Haydon,* 18 Cal.App. 543, 553 [123 P. 1102].) Carrying out the spirit and intent of this constitutional provision, the Legislature has ordained that the jury are the exclusive judges of the credibility of witnesses (Code Civ. Proc., sec. 1847), and are the judges of the effect and value of evidence addressed to them, except in those instances where it is declared by law that it shall be conclusive. (Code Civ. Proc., sec. 2061.)''

Appellant next contends that he was prejudiced at the outset of the trial by improper proceedings in the presence of the jury panel. When the cases were called and before the jury was impaneled the trial judge stated that he understood that defendant Thompson did not want his attorney to represent him further, and Thompson confirmed this. There was then some discussion as to the appointment of the public defender to represent Thompson and the record then shows

the following: "The Defendant Thompson: As it was, my lawyer here wanted me to plead guilty——The Court: No, don't make any statement, as long as you don't want him to represent you. The Defendant Thompson: I would like to engage an attorney if there is any way possible. Mr. Anderson: May I suggest we adjourn to chambers for a moment? The Court: Well, all right, no objection, with the reporter. Mr. Anderson: I will waive the presence of the defendant. The Court: How about yourself, will you waive being present? The Defendant Thompson: Yes." Counsel for appellant Tucker thereupon, in the court's chambers, moved the court to dismiss the panel upon the ground that the jury in so many words was told that Thompson's lawyer wanted him to plead guilty and that such statement would prejudice the minds of the jury against Thompson's codefendant, the appellant Tucker. The trial judge denied the motion to discharge the panel, stating that he would instruct the jury that the appellant had pleaded not guilty, that he was presumed to be innocent and that the jury were to carry with them the presumption of appellant's innocence until the jury determined the issues of fact presented. Court and counsel then returned to the court room and the jury was selected.

Appellant argues that the quoted statement by Thompson would impress the lay mind even before the hearing that Thompson was guilty, and, since the three defendants were charged jointly, the effect would be to impress the jury that appellant Tucker was also guilty, and that, therefore, appellant was compelled to enter upon the trial under a handicap that would prevent him from having a fair trial. Included in the instructions given to the jury were the following: that the appellant had entered a plea of not guilty; that he was presumed to be innocent; that unless his guilt was proven beyond a reasonable doubt he was entitled to an acquittal; that he was to be tried only upon the evidence that was before the jury. Appellant argues, however, that such instructions could not remove the prejudicial effect of the statement by Thompson in the presence of the jury panel and that the trial court erred in denying his motion for the dismissal of the panel.

A reading of the entire record shows that the evidence against Thompson was overwhelming, so that it is difficult to understand how appellant Tucker could have been prejudiced by the mere statement by Thompson that his attorney

wanted him to plead guilty. Furthermore, the record shows that while the three defendants were entitled to ten peremptory challenges to be exercised jointly, and also five additional peremptory challenges each (Pen. Code, § 1098) only sixteen members of the panel were examined and only one peremptory challenge was exercised by the defendants, either jointly or individually, which indicates to us that appellant must not then have considered the statement of Thompson as prejudicial as he now claims it to have been. While the trial court might well have granted the motion to dismiss the jury panel, we cannot hold, upon the record here, that his denial of the motion was either erroneous or prejudicial.

■ ▇▇ Appellant's third contention is that he "was prejudiced by the cross-examination of defendant Thompson as to his alleged confession." Inspector Doherty on direct examination testified that after Thompson's arrest he questioned him; that he asked Thompson about the holdup and Thompson stated "he participated in this robbery with Chester Harris and Tucker and that at the time of the other robbery they took the shotgun out of the car with this money and Tucker held up the girl and that he and Harris packed the money in and out fo the car. . . ." Appellant Tucker's attorney objected to such testimony with reference to Tucker. The court sustained the objection and the district attorney stated he would have no objection to having it excluded as to defendant Tucker, so far as naming accomplices.

After this the defendant Thompson testified that these statements were obtained from him by physical abuse and under a promise that his common-law wife, with whom he was arrested, would be released and they would be allowed to marry and finally that there was no truth to these statements but he merely gave them so as to effect the release of his woman; that actually the answers were those of the police rather than his own. Thompson never signed the statements.

The district attorney on cross-examination of Thompson then went through the statement taking each question and answer and asking Thompson whether such was his answer or that of the police. In some of such answers Tucker was implicated as being a participant in the crime.

However, before such procedure took place the district attorney conceded that such statements would as to defendant Tucker be hearsay and would be binding only on defendant Thompson. The court agreed. Practically every time Tucker's

name was mentioned, it was either stipulated that as to defendant Tucker it was not binding and hearsay or the objection to such evidence as against Tucker was sustained. At one point the following occurred: "MR. WEINBERGER [assistant district attorney]: I would suggest that the jury be admonished that in any case these are admissible only as against this particular defendant, and not as against the defendant Wardell Tucker. THE COURT: Yes, I think the jury so understands. In other words, this witness cannot testify to things that did not occur in the presence of Tucker, and these things are admittedly not in the presence of Tucker, and not intended to be binding on the defendant Tucker. . . ."

It was, of course, proper for the People to introduce evidence of admissions or statements claimed to have been made by Thompson as evidence against him and it was likewise proper to cross-examine Thompson in detail as to said statements when he sought to repudiate them. Such statements of Thompson not in the presence of appellant Tucker were, of course, inadmissible as to him and not binding upon him, and the jury was so informed not once but many times. The rights of appellant were as well protected as it is possible to protect a codefendant in a criminal case against statements or admissions made by his codefendant. The jury was carefully and correctly instructed in this regard and we must assume in the absence of a contrary showing that the jurors heeded the instructions of the court. In *People* v. *Burdg*, 95 Cal.App. 259, the court said at page 268 [272 P. 816]: "It is true, the prosecution was allowed to introduce in evidence at the joint trial extrajudicial declarations made by the respective appellants out of the presence of the other, but this situation of itself does not give defendants jointly charged the absolute right to separate trials, because if such were the rule then in no case could there be a joint trial when part of the evidence against the joint defendants consisted of extrajudicial statements; furthermore, in the present case, the record discloses that in admitting said declarations the trial court in each instance carefully and properly instructed the jury to the effect that the rights of the absent party were to be in no way affected thereby; and we must presume, in the absence of a contrary showing, that the jury followed those instructions. (*People* v. *Prather,* 134 Cal. 436 [66 P. 589, 863].)" See, also, 4 Cal.Jur 10-Yr.Supp. (1943 Rev.) 656, § 194, and the cases of *People* v. *Matthew,* 194 Cal. 273 [228 P. 424];

568

*People* v. *Yeager,* 194 Cal. 452 [229 P. 40] ; *People* v. *Jordan,* 24 Cal.App.2d 39 [74 P.2d 519] ; *People* v. *Trotter,* 120 Cal. App. 54 [7 P.2d 731] ; and *People* v. *Walden,* 75 Cal.App. 565 [243 P.25].

■ The appellant next contends that the district attorney was guilty of prejudicial misconduct in his argument to the jury. In his opening argument the district attorney stated that an attorney who places a witness on the stand in effect vouches for his testimony and said that he had not called Harris (one of the three codefendants who had changed his plea to ''guilty,'' after the jury had been empanelled) as a witness because he did not think that any testimony Harris might give would be worthy of belief. Following this statement, the public defender, who was counsel for Thompson, in his argument referred to the above statement by the district attorney and said that the reason given by the district attorney was not the real reason why Harris was not called by the district attorney as a witness, but that the real reason was that there was an arrangement between Harris' attorney and the district attorney that Harris would not be put upon the witness stand. Then in his closing argument the district attorney replied to the public defender's statement in the following language: ''The reason Harris was not called was the reason I gave; but since Mr. White has seen fit to question that reason, I will give you a little more information about what happened to Harris. After the People's opening statement, Mr. Harris, through his attorney, elected to plead guilty; and at the time that he did that, his attorney, in the presence of his Honor, Judge Deasy, said to me, he does not want to be called as a witness; and I said to Mr. Anderson who represented Harris, I won't call him as a witness, I don't need him. And I don't need him, ladies and gentlemen, when we have the type of case we have here. Why rely upon the unreliable testimony of an accomplice. There are cases where such testimony must be relied upon, but this is not one of those cases. And as I said this morning, we did not believe Harris when he was arrested, we did not believe anything he told us before, and I would not put him on the stand and expect you to believe anything that he said, even though he admitted these two men were his pals.''

Counsel for appellant then asked that the said statement of the district attorney be stricken and assigned it as misconduct and prejudicial error. The court ordered it stricken

and instructed the jury to disregard it. The jury was likewise told by the court in its instructions that the arguments and statements of counsel are not to be regarded as evidence in the case.

While it is perhaps debatable as to whether or not the latter statement of the district attorney was within the legitimate scope of argument, we are convinced that, upon the record here, the remarks did not constitute prejudicial error so far as appellant Tucker (who is the sole appellant) is concerned. The following language of the court in *People* v. *Granillo*, 140 Cal.App. 707, at page 717 [36 P.2d 206], is quite applicable here: "Each case of misconduct must be judged by its own particular circumstances, and before a judgment is reversed on that ground it must appear that the misconduct reached the point where injustice resulted to the defendant. And it is a general rule that misconduct of the district attorney will not suffice to justify the granting of a new trial if upon the whole case it can be said that the possible effect thereof was subsequently removed by a proper admonition of the trial court to the jury, having in mind the presumption that the jury obeyed the court's instruction."

 Appellant's final contention is that the court committed prejudicial error in giving the following instruction to the jury: "The importance of your duties requires that you consider the right of the people of the State of California to have the laws properly executed, and that it is with you, citizens selected from the city and county, that finally rests the duty of determining the guilt or innocence of those accused of crime; and unless you do your duty, laws may as well be stricken from the statute books." Appellant argues that this instruction would convey the meaning to the jury that unless they found the defendants guilty laws might as well be stricken from the statute books. Perhaps, if this were the only instruction given, it might be susceptible of such a construction. But the instructions of the court must be taken as a whole, and when the following portions of the instructions preceding and following the language above quoted are read, it is apparent that no such impression could be gained: "You are to be governed, therefore, solely by the evidence introduced in this trial and the law as given you by the Court. The law will not permit jurors to be governed by mere sentiment, conjectures, sympathy, compassion or prejudice. A verdict founded upon sentiments of pity for the accused, or upon

public opinion or public feeling, or upon passion or prejudice, or upon conjectures, would be a false verdict and you will not take counsel of them in deliberating upon your verdict. *The importance of your duties requires that you consider the right of the people of the State of California to have the laws properly executed, and that it is with you, citizens selected from the city and county, that finally rests the duty of determining the guilt or innocence of those accused of crime; and unless you do your duty, laws may as well be stricken from the statute books.* You should also keep in mind the importance to the accused of the result of your deliberations and be just to him, as well as to the people of the State of California. Both the public and the defendant have a right to demand, and they so demand and expect, that you will carefully and dispassionately weigh and consider the evidence and the law of the case, and give to each your conscientious judgment; and that you will reach a verdict that will be just to both sides, regardless of what the consequences may be.'' (Emphasis added.)

Furthermore, in the case of *People* v. *Wolff,* 182 Cal. 728 [190 P. 22], in which the jury was instructed in the identical language just quoted, the Supreme Court said at page 739: ''The defendant argues that the last sentence of the instruction, in effect, directed the jury that they should find the defendant guilty, and if they did not do so they would have neglected their duty. . . . The instructions, and particularly a single instruction, must be considered as a whole. We cannot perceive wherein the court in this instruction in any respect misdirected the jury as to their duty, and we do not think that it could have been understood by the jury as a direction that they would have been neglectful of their duty if the defendant was not convicted.''

In view of the foregoing we conclude that there can be no doubt as to the sufficiency of the evidence to sustain the conviction of appellant, that no prejudicial errors were committed, and that the order denying the motion for a new trial and the judgment should be and are hereby affirmed.

Peters, P. J., and Ward, J., concurred.